452 A.2d 739

MAR RAY, INC.

v.

Albert B. STARR and William K. Kerschbaumer, individually and as joint venturers, Appellants.

Superior Court of Pennsylvania.

Argued April 15, 1980.

Filed Nov. 5, 1982.

Petition for Allowance of Appeal Denied March 30, 1983.

308

Edward C. Leckey, Pittsburgh, for appellants.

Anthony J. Martin, Monroeville, for appellee.

Before PRICE, BROSKY and MONTGOMERY, JJ.

PRICE, Judge:

This is the second time this mechanic's lien has been before this court. In *Mar Ray, Inc. v. Schroeder,* 242 Pa. Superior Ct. 14, 363 A.2d 1136 (1976), we reversed the Court of Common Pleas of Allegheny County and held that the claim by Mar Ray, Inc. ("Mar Ray"), appellee herein, withstood the preliminary objections based on a waiver of lien clause filed by the appellants herein. A jury trial before the Honorable John P. Flaherty followed[1] and a verdict was returned for appellee in the full amount of its claim of $60,848.33. Appellants filed a motion for new trial and a motion for judgment n.o.v., both of which were denied. This appeal followed. We affirm the trial court.

---

1. There is some confusion in the mind of counsel for appellee as to the year in which this trial took place. Although the transcript of testimony is dated May 25, 1976, this appears to be erroneous, as the entry on the docket dates the trial in 1977.

The documentary evidence and recorded testimony of this case reveal a tangled morass of business dealings by appellants regarding the subject property located in the 26th Ward of the City of Pittsburgh known as Village in the Park to which they held a ninety-nine year land lease. Simply stated, on May 21, 1968 appellants contracted with the Arkay Construction Company ("Arkay") for the construction of an apartment complex on the aforementioned property. A waiver of liens agreement was recorded under this contract in the Office of the Prothonotary of the Court of Common Pleas of Allegheny County. Thereafter, on August 1, 1968, appellee executed a contract with Arkay to perform carpentry work in connection with the project, wherein appellee was designated the "subcontractor" and appellant the "contractor" and wherein appellee agreed to waive its right to lien.

On October 28, 1969, pursuant to the Mechanics' Lien Law, Act of August 24, 1963, P.L. 1175, No. 497, 49 P.S. 1101 et seq., appellee filed a Mechanic's Lien claim against appellants.[2] Therein, and in its subsequent complaint incorporating the Mechanic's Lien Claim, Mar Ray claimed, first, that Arkay was, in fact, controlled and owned by appellants and was used "as an agent, vehicle, or conduit" for the purpose of entering contracts to construct the buildings in Village in the Park and, second, that Arkay abandoned the job on June 15, 1969 at which time Mar Ray completed its carpentry work after receiving the oral promise of appellant Albert B. Starr to pay Mar Ray any and all sums due it for work and labor performed on the project.[3]

**2.** The Mechanic's Lien Claim was also filed against the fee simple interest in the property. No appeal was taken from the order striking the lien against that interest.

**3.** Appellants argue that the facts surrounding the date of the promise from Starr are stated in contradictory terms by appellees. It is true that appellee's president testified that this promise was actually given to him at a meeting on May 14, 1969 after Arkay's repeated failure to meet its contractual obligations. (R. 297a–299a). During his testimony at trial appellee's president explained the discrepancy in the Mechanic's Lien Claim as a misprint. (R. 330a).

In their first allegation of error, appellants strenuously argue that the admission of evidence and instructions to the jury on the issue of whether Arkay and appellants are a single entity [4] were erroneous because (1) this court's remand order restricted the trial to the issue of the existence of the oral contract with Starr, and, (2) the trial court acted improperly in instructing the jury on any reliance-related issue.

■ We cannot agree with appellants that this court's opinion in *Mar Ray, Inc. v. Shroeder,* 242 Pa. Superior Ct. 14, 363 A.2d 1136 (1976), restricted the scope of the trial on the merits solely to the issue of whether the lien was filed pursuant to the oral contract with appellant Starr which did not contain a waiver of liens, rather than pursuant to Mar Ray's original contract with Arkay which did contain such a waiver. We were quite specific in stating that the only issue decided was that Mar Ray's claim withstood the preliminary objections based on the waiver:

> On this appeal, we do not decide the validity of appellant's [Mar Ray's] cause of action on the merits, nor do we decide the validity of any defense appellees may have on the merits . . . . The narrow question decided today is whether appellant's claim can withstand appellee's preliminary objections. We have decided the narrow question in favor of the appellant.

*Id.,* 242 Pa.Superior Ct. at 17–18, 363 A.2d at 1137–1138. No singular evidentiary issue was argued before this court or disposed of by this court such that claims or arguments would be waived if not raised as was the case in *Commonwealth v. Romberger,* 474 Pa. 190, 378 A.2d 283 (1977). We held only that the lower court erred in dismissing the claim

---

4. Mar Ray asserts §§ 402 and 407 of the Mechanics' Lien Law of 1963, 49 P.S. §§ 1402, 1407, which provides that although a general contractor's written waiver of the right to file liens is binding upon all subcontracters provided it is properly recorded, such waiver shall have no effect as to third party subcontractors if the contractor is not intended in good faith to be an independent contractor but is in reality an agent of the owner. *See, Stringert & Bowers, Inc. v. On-Line Systems, Inc.,* 236 Pa. Superior Ct. 196, 345 A.2d 194 (1975).

before affording Mar Ray the chance to prove its allegations.[5] *Mar Ray, Inc. v. Schroeder, supra.* Therefore, we hold that admission of evidence regarding the relationship between appellants and Arkay was not error on this ground.

■ Nor can we agree that the trial court's charge to the jury pertaining to the issues surrounding appellee's reliance on Arkay's recorded no-lien agreement was so prejudicial as to require a new trial. Assuming, arguendo, that the submission of the evidence on a reliance theory was error, the charge also instructed the jury under the theory of a second contract which defendants concede was proper. In determining whether or not prejudicial error has occurred in the instructions of a court to a jury, the entire charge must be read. *James v. Ferguson,* 401 Pa. 92, 97, 162 A.2d 690, 693 (1960); *Buchecker v. Reading Co.,* 271 Pa. Superior Ct. 35, 53, 412 A.2d 147, 156 (1979); *Hajduk v. Fague,* 200 Pa. Superior Ct. 55, 62, 186 A.2d 869, 873 (1962). We find that the lower court properly instructed the jury on the oral contract between Mar Ray and appellant Starr in accordance with the evidence pertaining thereto so as to sustain the findings of the jury despite any possible error in the charge relating to reliance issues.

■ The court's instructions were consistent with the rule that when the evidence is conflicting as to whether a new contract has been made, relative to the filing of a mechanic's lien, the case is for the jury to determine whether such a new contract was made. *John B. Kelly, Inc. v. Phoenix Plaza, Inc.,* 249 Pa. Superior Ct. 413, 378 A.2d 363 (1977); *Pagnacco v. Faber,* 221 Pa. 326, 70 A. 754 (1908); *Spring Brook Lumber Co. v. Watkins,* 26 Pa. Superior Ct. 199 (1904). Judge Flaherty charged:

> ... [O]ne of the [questions] that you will ... determine [is] whether the alleged second contract was, in fact, a new, wholly and distinct contract and independent contract. What [were] the contents of that contract[?] What

---

**5.** We agree with Judge Flaherty below that our use of the word "allegations" was in its generic sense rather than linked to any specific allegation. (R. 285a).

was the understanding of the parties relating to that contract if, in fact, there was such a contract . . . . If it was merely a promise to pay if Arkay did not pay, then that would not be lienable. If, on the other hand, it was a new, wholly distinct contract, an independent contract between Mar Ray and Mr. Starr then it would be your function to determine the contents of that contract, if such as there be one [containing] a waiver of liens and you would have to consider all of the evidence you have heard to determine such was in fact the case.

(R. 613a–614a).[6]

■ In considering a motion for judgment n.o.v., the evidence, together with all reasonable inferences therefrom, is considered in the light most favorable to the verdict winner. *Chambers v. Montgomery*, 411 Pa. 339, 341, 192 A.2d 355, 356 (1963). Viewed in this light, the evidence weighs considerably in favor of the appellees. At the time of the second contract Arkay was already four to five months behind in payments to Mar Ray and appellants themselves were having great difficulty in their attempts to communicate with Arkay's president. (R. 296a). Mar Ray's president testified that he could not have kept his crews on the job but for the promise he received from appellant Starr. (R. 304a). Furthermore, evidence concerning appellants' heavy financial investment in the project along with evidence of their close relationship with Arkay[7] lent credence to appellee's argu-

6. Appellants contend that the court below erred in denying their motion for judgment n.o.v. because appellee's president admitted that his agreement with Albert Starr was an oral guarantee and not a new and independent contract. This alleged admission was an affirmative response to a question on cross-examination by appellant's counsel: "But you knew that if Arkay didn't pay you after May 14, Albert Starr would?" (R. 334a). However a previous statement on cross examination by the same witness ("I wanted paid for everything I had done which he promised and he would pay me," (R. 333a).) together with the other evidence concerning the circumstances surrounding the second contract created a disputed question of fact properly submitted to the jury for their interpretation. *Spring Brook Lumber Co. v. Watkins*, 26 Pa. Superior Ct. 199 (1904).

7. Appellants argue that the lower court erred in denying their motion for withdrawal of a juror because the evidence pertaining to the

ment that appellant Starr had a tremendous personal stake in persuading Mar Ray to return to work and in having the project completed by September 1. We are unable to say, therefore, that the jury could not have found a valid mechanic's lien based on Mar Ray's agreement with appellant Starr to be compensated for all sums due it for labor performed on the project.[8]

Finally, appellants argue that they are entitled to a new trial because the president of Mar Ray testified falsely at trial in his denial that the words "payment in advance for work from July 7 to completion of contract as per Arkay Const. Co. Inc." appeared on a check at the time of its receipt from Starr on July 2, 1969.

Appellants claim that because they "did not anticipate . . . false testimony . . . on a point such as this where indisputable documentary proof is always available," brief for appellants at 45, they did not have the bank's copy of the check ready to produce at trial. However, after trial appellants did request and receive the bank's copy of the check verify-

financing of the project was irrelevant and prejudicial. We agree with the lower court and appellee that this evidence was relevant to the totality of the circumstances surrounding the second contract including the situations of the parties which gave rise to the necessity of the second contract. None of this evidence appears to have been so prejudicial to appellants that its admission constituted a clear abuse of the trial court's discretion. *Gilligan v. Shaw,* 441 Pa. 305, 307, 272 A.2d 462, 464 (1971), *Chambers v. Montgomery,* 411 Pa. 339, 341, 192 A.2d 355, 356 (1963).

**8.** Appellant also cites as error the trial court's refusal to charge the jury that under the second contract appellee was entitled to lien only for work done on or after the date of the oral promise. We are unconvinced that the cases cited by appellant compel such a direction as a matter of law. The subcontractor in *Pagnacco v. Faber,* 221 Pa. 326, 70 A. 754 (1908) may only have claimed for work done after his new contract with the new owner of the building, but the case does not hold that such a contract may *not* include payments for work previously done by the subcontractor if such a claim is made and is supported by the evidence. In *Waters v. Wolf,* 2 Pa. Superior Ct. 200 (1896), this court did hold that a waiver of a no-lien agreement may not be readily inferred, but in that case, there was no evidence that the lien was filed after and not before the purported waiver. Such is not the case here. The controlling rule remains that the contents of an oral contract are a jury question.

ing that the disputed writing was present on the check when delivered to Mar Ray.

In support of their argument for new trial, appellants cite cases granting the motion where a party or witness has willfully and admittedly perjured essential testimony, *Blake v. Marinelli*, 357 Pa. 314, 53 A.2d 550 (1947) (per curiam); *Kuzma v. Kuzma*, 191 Pa. Superior Ct. 295, 156 A.2d 884 (1959), or where evidence of the perjury was not in existence until after trial and such evidence was factually compelling so as to justify a new trial. *McCabe v. Pa. Railroad Co.*, 311 Pa. 229, 166 A. 843 (1933).

The circumstances of the case now before us, however, are not sufficiently similar to these cases to dissuade us from applying the rule in *Hornick v. Bethlehem Mines, Corp.*, 310 Pa. 225, 228, 165 A. 36, 37 (1933):

> It is well established that in order to grant a new trial on the basis of after-discovered evidence, the evidence must have been discovered since the trial and be such as could not have been obtained at the trial by the use of reasonable diligence; it must not be simply cumulative or merely to impeach the credibility of the witness.

In addition, the granting or refusal of a new trial based on after-discovered evidence is an area addressed to the sound discretion of the court and the exercise of this discretion by the court will be reversed only where it has been clearly abused. *Helmig v. Rockwell Manufacturing Co.*, 389 Pa. 21, 131 A.2d 622 (1957), cert. den. 355 U.S. 832, 78 S.Ct. 46, 2 L.Ed.2d 44, reh. den. 355 U.S. 885, 78 S.Ct. 146, 2 L.Ed.2d 115; *Hornick v. Bethlehem Mines Corp., supra.*

Obviously, Judge Flaherty felt that if this evidence was as crucial to appellants' case as they now submit, they most certainly could have and should have gathered their best evidence of this writing during the several years prior to trying this lawsuit. The refusal of a new trial on this ground was a proper exercise of discretion by the trial court and we, therefore, dismiss appellant's allegation of error.

Because we can find no reversible error in the trial court's order of May 30, 1979 refusing appellants' motion for new trial and judgment n.o.v., we affirm.