458 A.2d 989

In re ESTATE OF Joseph F. GEORGIANA, Deceased.

**Appeal of Joseph F. GEORGIANA, Jr., and Lawrence S. Georgiana.**

Superior Court of Pennsylvania.

Argued May 20, 1982.

Filed March 31, 1983.

Petition for Allowance of Appeal Granted Sept. 27, 1983.

Roslyn M. Litman, Pittsburgh, for appellants.

Ira B. Coldren, Jr., Uniontown, for Gallatin Bank, participating party.

Carl W. Brueck, Jr., Pittsburgh, for Campbell, participating party.

Before ROWLEY, MONTEMURO and VAN der VOORT, JJ.

MONTEMURO, Judge:

On August 11, 1981, the Orphans Court of Fayette County (per the Honorable Charles G. Sweet, President Judge, sitting by special designation) entered an order dismissing exceptions to a previous order denying a petition for removal of executor and appointment of a successor. The petition had been filed by Joseph F. Georgiana, Jr. and Lawrence S. Georgiana, residual legatees and the appellants herein, seeking removal of Gallatin National Bank as executor of the estate of their deceased father, Joseph F. Georgiana, Sr. The appellants contended that the executor bank should be removed because of multiple breaches of its fiduciary duty, including: (1) loss, waste and mismanagement of estate assets; (2) refusal to collect estate assets; (3) engaging in profitable self-dealing; (4) hostility to certain of the residual legatees; and (5) general incompetence. The lower court found there was insufficient "misconduct or ineptitude or hostility to justify the severe action of removing the corporate fiduciary."

Before addressing the merits of the appeal we find it necessary to resolve a preliminary question of jurisdiction raised by appellee, Gallatin National Bank [Bank]. The Bank contends that the present appeal should be quashed as interlocutory because the order of the court below was not a final order.

In *Pugar v. Greco*, 483 Pa. 68, 394 A.2d 542 (1978), our Supreme Court succinctly set forth the standard by which Pennsylvania appellate courts determine whether or not an appeal is from a final order.

It is, of course, well settled that an appeal will lie only from a final order unless otherwise permitted by statute. See, e.g., *T.C.R. Realty, Inc. v. Cox*, 472 Pa. 331, 372 A.2d 721 (1977); *Caplan v. Keystone Weaving Mill*, 431 Pa. 407, 246 A.2d 384 (1968); *Stadler v. Mt. Oliver Borough*, 373 Pa. 316, 95 A.2d 776 (1953).[7] A final order is one which usually ends the litigation, or alternatively, disposes of the entire case. *Piltzer v. Independence Federal Savings and Loan Association*, 456 Pa. 402, 404, 319 A.2d 677, 678 (1974). In determining what constitutes a final order we have followed the approach of *Cohen v. Beneficial Industrial Loan Corporation*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), in that we look to "a practical rather than technical construction" of an order. In *Cohen*, the Supreme Court of the United States carved out an exception to the final judgment rule for situations where postponement of appeal until after final judgment might result in irreparable loss of the right asserted. Under *Cohen*, an order is considered final and appealable if (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost. *Id.* at 546, 59 S.Ct. at 1226, 93 L.Ed. at 536.

---

[7] Section 302 of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, 17 P.S. § 211.302, since superseded by Judicial Code § 742 (effective June 27, 1978), provides:

"The Superior Court shall have exclusive appellate jurisdiction of all appeals from *final orders* of the courts of common pleas, regardless of the nature of the controversy or the amount involved, except such classes of appeals as are by any provision of this chapter within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court." (Emphasis supplied)

*Id.*, 483 Pa. at 72–73, 394 A.2d 544–545.

In the present case, the order of the court below did not "[end] the litigation, or alternatively, [dispose] of the entire

case." There has been no final account of distribution of the estate. If we were required to be *strictly* technical we would have to find that the lower court's order was not final. However, *Pugar* recognizes the exception carved out by the United States Supreme Court in *Cohen v. Beneficial Industrial Loan Corporation, supra,* for that small class of decisions "which fully determines claims of rights separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Industrial Loan Corporation, supra* 337 U.S. at 546, 69 S.Ct. at 1226, 93 L.Ed. at 1536.

■■ Applying the *Cohen* analysis herein leads us to the conclusion that an order granting or denying removal of an executor is a final order which may be appealed to this court. First, it is an order which finally determines a claimed right; i.e. the right of a beneficiary or beneficiaries to a competent and trustworthy executor who will carefully and faithfully carry out the intentions of the testator and also use its best efforts to maximize and fairly distribute the estate to the devisees and legatees. By denying the petition the lower court has made a determination that this right has not been infringed, just as an order granting the petition would, of course, indicate an opposite conclusion. Such a determination is not the end of the litigation since it is part of the administration, accounting and distribution of the decedent's estate. It is, however, a separate and collateral order in that the executor, while performing an important administrative and fiduciary function, can be replaced by another party. The administration of the estate, while delayed, would continue.

Second, the right is one which is too important to be denied review. Neither party contends anything to the contrary. When the assets of an estate are subject to possible harm or diminution because of acts or omissions of

an executor the courts are the appropriate forum to decide what action is necessary to remedy that harm. While the trial courts, because of the experience acquired in handling estate cases, are eminently capable of deciding questions of removal, such questions involve serious issues bearing upon the property in question, the reputation of the executor and also the interest of the state in assuring orderly administration and in properly ascertaining and collecting revenues. We find these issues important enough to merit appellate review.

Third, in many, if not all, cases the right will be irreparably lost if review is deferred. Appellee Bank argues that any loss due to its acts or omissions can be remedied by levying a surcharge pursuant to 20 Pa.C.S.A. § 3501.1 and thus immediate review is not necessary. While this may be true in the case of a solvent corporate fiduciary, it may not be true where the executor is an insolvent or financially unstable corporation, or an individual.[1] In the latter event, deferral of review may mean that the assets of the estate will be dissipated or destroyed in the interim. Thus, the right would be lost because surcharge would be nothing more than a hollow remedy.

We find that an order denying a petition for removal of an executor is a final order proper for appellate review. We note that appellate courts in Pennsylvania have decided appeals from orders denying petitions for removal, but without addressing the jurisdictional issue. *In Re Estate of Pitone*, 489 Pa. 60, 413 A.2d 1012 (1980); *Estate of Hamill*, 487 Pa. 592, 410 A.2d 770 (1980); *Estate of Halper*, 487 Pa. 408, 409 A.2d 415 (1980); *cf. In Re Estate of Croessant*, 482 Pa. 188, 393 A.2d 443 (1978) (citing *In Re Crawford's Estate*, 340 Pa. 187, 16 A.2d 521 (1940) (lower court order *removing* trustee subject to appellate review)). The action taken by the courts in these cases clearly indicates that the

1. We do not intimate in any way that the Executor herein is insolvent or financially unstable. We are speaking only in the general sense.

question involved is of sufficient importance to necessitate immediate appellate review.

■ Before discussing the merits of the case, a recitation of some of the relevant facts would be appropriate. Joseph F. Georgiana died leaving a will which divided his estate equally between his sons, Joseph F. Georgiana, Jr. and Lawrence S. Georgiana, and a business associate, Loretta Campbell. Appellee Gallatin National Bank was named as executor. The decedent's widow, Barbara Georgiana, gave notice of her right of election pursuant to 20 Pa.C.S.A. § 2508(a). She eventually settled her claim against the estate for $200,000.00.

The decedent's estate consisted primarily of stock in four closely held corporations, including: (1) New Venetian Corporation, in which the decedent held a majority interest and Loretta Campbell held a minority interest, through which they operated the Venetian Restaurant and the Gourmet Shoppe; (2) Georgiana Realty Co., in which the decedent held a fifty (50%) per cent interest and his brother, Samuel Georgiana held a fifty (50%) per cent interest, through which they owned and managed real estate in the Uniontown area; (3) Fayette Frozen Foods, in which the decedent held a minority interest, decedent's sons held a minority interest and decedent's brother held a majority interest, a wholesale food distributor; and (4) Fayette Leasing Co., principally owned by decedent's sons, with decedent holding a minority interest, which leased vehicles to Fayette Frozen Foods.

In the early stages of administration the parties proceeded relatively amicably. They agreed that Loretta Campbell would purchase from the estate the decedent's stock in New Venetian Corporation, and that the decedent's sons would likewise purchase the stock in Fayette Frozen Foods. The sale of Fayette Frozen Foods was, in fact, consumated, but the sale of New Venetian Corporation was not, because of a fire which destroyed the restaurant, the corporation's principal asset.

Relations between the parties quickly deteriorated. Charges and countercharges were exchanged which led to legal proceedings and inevitably delayed the administration of the estate. The charges most pertinent to the present appeal can be delineated into three categories. One, that the appellee Bank was guilty of waste, mismanagement and ineptitude in collecting and preserving the assets of the estate. Two, that the appellee Bank favored the interests of Loretta Campbell over the interests of the other beneficiaries (decedent's sons), and over the interests of the estate itself. Three, that the appellee Bank engaged in profitable self-dealing.

In the first category, appellants allege that the Bank failed or refused to collect assets of the estate including a Forty-Seven Thousand ($47,000.00) Dollar debt owed to decedent by New Venetian Corporation, Five Hundred (500) Shares of Stock of the New Venetian Corporation claimed to be a gift from the decedent by Loretta Campbell, a checking account, called the "Venetian Restaurant—Banquet Account" containing over Eighty-Three Thousand ($83,000.00) Dollars, and Fifty-Five Thousand ($55,000.00) Dollars in Municipal Bonds taken by Loretta Campbell from a safety deposit box after the death of the decedent. Appellants also allege that the Bank negligently allowed an estate asset (Gourmet Shoppe) to fall into disrepair,[2] and that they negligently allowed Loretta Campbell to use over Twenty-Eight Thousand ($28,000.00) Dollars of New Venetian Corporation funds for her personal use. This amount was over and above the Banquet Account.

The appellants' basis for their allegations of favoritism should be obvious from the above recitation. However, they allege further that the appellee Bank favored Loretta

2. In 1978, the Gourmet Shoppe ceased operations and was closed. There was no inspection of the premises for a period in excess of six months. Subsequent inspection revealed interior damage from lack of heat and ventilation. Repairs cost $3230.00, which was paid from the assets of the New Venetian Corporation.

Campbell in judicial proceedings during the course of the administration. They charge that, although the Bank filed petitions to recover assets of estate (for the Banquet Account, the Municipal Bonds, and other funds of the New Venetian Corporation), it did so as a mere perfunctory gesture to minimally accommodate a court order,[3] and that the Bank took no further action on the petitions. They further charge that the Bank opposed their (decedent's sons') petition to take distribution in kind merely to harass them.

Finally, they charge the executor misrepresented to the court at a hearing on December 17, 1979 that a codicil of the decedent's will was never delivered to the executor and was invalid.

The third category of alleged misconduct is that the Bank improperly engaged in profitable self-dealing. The charge stems from loans in the amount of $175,000.00, made by the Bank to the estate to pay off tax liabilities and other debts at high interest rates (12%–19.5%). At the same time the Bank had invested in its own certificates of deposit Two Hundred and Twenty Thousand ($220,000.00), belonging to the estate,[4] which was earning a lower rate of interest (8%–15.5%). Appellants allege that the Bank's profits from these transactions exceeded Ten Thousand ($10,000.00) Dollars. They further allege that the Bank was negligent in allowing the insurance proceeds to remain uninvested for over two months.

While by no means complete the above is representative of the complaints which the appellants have against the executor, and is the bulwark of their grounds for seeking its removal from its fiduciary position.

3. On September 12, 1979, the lower court, per the Honorable Fred C. Adams, ordered, *inter alia*, the executor to investigate and recover assets of the estate which may not have been brought into the estate.

4. The amount in question represented the proceeds recovered from the insurance company after the fire which destroyed the Venetian Restaurant.

The grounds for removal of a personal representative set forth in the P.E.F. Code, Act of June 30, 1972, P.L. 508, No. 164 § 2, eff. July 1, 1972, 20 Pa.C.S.A. § 3182:

§ 3182.  Grounds for removal

The court shall have exclusive power to remove a personal representative when he:

(1) is wasting or mismanaging the estate, is or is likely to become insolvent, or has failed to perform any duty imposed by law;  or

(2) has been adjudged a lunatic, a habitual drunkard, or a weakminded person;  or

(3) has become incompetent to discharge the duties of his office because of sickness or physical or mental incapacity and his incompetency is likely to continue to the injury of the estate;  or

(4) has removed from the Commonwealth or has ceased to have known place of residence therein, without furnishing such security or additional security as the court shall direct;  or

(5) when, for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office.

This provision was construed by our Supreme Court in *In Re Estate of Pitone*, 489 Pa. 60, 413 A.2d 1012 (1980):

... Removal of the personal representative is largely within the discretion of the Orphans' Court.  Thus our present inquiry is whether the court below abused its discretion.  *Beichner Estate*, 432 Pa. 150, 247 A.2d 779 (1968).

The removal of a fiduciary is a drastic action which should be taken only when the estate is endangered and intervention is necessary to protect the property of the estate.  *Scientific Living, Inc. v. Hohensee*, 440 Pa. 280, 295, 270 A.2d 216, 224 (1970).  Particularly drastic is the removal of the executrix chosen by the testator, since her appointment represents an expression of trust and confi-

dence in her. *In Re Estate of Lux*, 450 Pa. 256, 389 A.2d 1053 (1978).

*Id.*, 489 Pa. at 68, 413 A.2d at 1016.

Under the above standard we find that the court below has not abused its discretion. Several factors influence our decision. First, if we were to remove the Bank as executor at this point it would necessitate the appointment of a successor. It would take several months for a successor to adequately familiarize himself with the voluminous records of the decedent, his corporations and of the judicial proceedings to date. Even after assimilating this material, it would take time to devise and implement the proper strategy to wind up the estate. We find such a delay to be unacceptable, especially in light of the already lengthy proceedings which have consumed more than six years.

Second, many of the appellants' allegations are unsupported in the record. We are unable to review that which has not been decided or that which is mere allegation and which has not been subjected to the test of an evidentiary hearing and judicial determination. The record before us, including the transcript of the hearing on the removal petition, the transcript of the hearing on the petition to take distribution in kind, the numerous depositions, petitions and other documents reveal instances of action and inaction by the Bank. Yet we do not think they rise to a level which mandates removal of the executor. At this time there are no less than four petitions pending before the lower court, filed by the executor, seeking recovery of estate assets. In addition, there are numerous exceptions to the Executor's Partial Account filed by both the appellants and by Lorretta Campbell. These matters have not been decided by the court below. While so many unproven and unresolved matters are pending, the drastic remedy of removal of the executor would be completely inappropriate. We find no abuse of discretion, and therefore affirm the order of the court below.

Order affirmed.