# In re ESTATE OF John PETRO, Deceased.

## Appeal of John IURLANO, Esquire, Administrator of the Estate of John Petro, Deceased.

Superior Court of Pennsylvania.

Argued Nov. 12, 1996.

Filed April 25, 1997.

Reargument Denied July 3, 1997.

---

Lawrence F. Leventon, Pittsburgh, for appellant.

John J. McLean, Jr., Pittsburgh, for participating parties.

Before JOHNSON, HUDOCK and FORD ELLIOTT, JJ.

JOHNSON, Judge:

In this appeal, we are asked to consider whether certain assets were properly removed from a decedent's estate by either inter vivos gift or the valid use of a power of attorney. In reviewing this matter, we must re-visit the proper application of the dead man's act. Before reaching that issue, however, we must determine when an appeal will lie of a matter that arises during the admin-istration of a decedent's estate. We conclude that the issue of whether an administrator may recover assets allegedly missing from a decedent's estate is separable from and collateral to the main cause of action and is, therefore, appealable. We also find that the Orphans' Court erred in permitting the daughters of the decedent to testify in violation of the dead man's act. Accordingly, we reverse and remand for a new hearing on the administrator's petition.

Anna and John Petro had eight children. Anna Petro died on April 15, 1990. At the time of her death, John Petro, either individually or jointly with Anna, had acquired bank accounts and certificates of deposit with a total value of $506,533.23 and stock valued at $140,454.00.

After the death of Anna Petro, Irene Bucci, one of Petro's daughters, assumed the primary responsibility for John Petro's financial affairs. Irene obtained a general power of attorney for this purpose one month after her mother's death. Christine Cuniak, another daughter of Anna and John Petro, was also appointed attorney-in-fact by this document. After becoming John Petro's attorneys-in-fact, Irene and Christine (collectively, "the daughters") were surprised to discover the extent of their father's estate. Thereafter, pursuant to their powers as attorneys-in-fact, the daughters retitled their father's bank accounts. John Petro signed blank forms that authorized the retitling of his bank accounts in various ways, adding Irene and Christine to his accounts. The daughters also opened a brokerage account with their father's assets. Municipal bearer bonds were purchased with assets from this account and delivered to the daughters, who have retained possession of these bonds.

John Petro died on June 15, 1992, survived by the daughters, four other adult children, and several adult grandchildren born to his two deceased sons. The record reflects that Petro died without a will; his estate therefore proceeded to administration under the laws of intestacy. When the presumptive heirs could not agree on which of them should administer Petro's estate, they con-

sented to the appointment of an independent administrator, Mr. John Iurlano.

Within three months of appointment, the administrator filed a petition in the Orphans' Court seeking a return of assets that were in the decedent's possession as of the date of Anna Petro's death, April 15, 1990. All assets noted in the petition were under the control of the daughters. In response to this petition, as well as a second petition naming additional assets alleged to be a part of John Petro's estate, the daughters averred that the assets in question had been received from their father as inter vivos gifts. Following a hearing, the court denied the administrator's petition to return the assets. Order, dated September 9, 1994.

The administrator filed exceptions to this order, and arguments on these exceptions were heard before the Orphans' Court en banc. The en banc court, with one judge dissenting, dismissed the administrator's exceptions on July 10, 1995. After the administrator filed a motion for a new trial nunc pro tunc on July 17, 1995, the court filed a preliminary order that stayed the entry of final judgment on the dismissal of the exceptions pending the receipt of evidence on the motion for a new trial. Order, dated July 17, 1995. This appeal follows from the denial of the motion for a new trial on March 11, 1996, and the entry of judgment, on March 29, 1996, in favor of the daughters and against the administrator on the denial of the petition to turn over assets.

■ Before reaching the merits of the administrator's appeal, it is necessary to determine which orders are properly on appeal to this Court. We begin by carefully reviewing the collateral order rule, first announced by the United States Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), adopted by the Pennsylvania Supreme court in *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 348 A.2d 734 (1975), and now set forth in Rule 313 of the Pennsylvania Rules of Appellate Procedure. This rule states that:

A collateral order is an order separable from and collateral to the main cause of action where the right involved is too im-

portant to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313(b).

Whether the assets named in the administrator's petition should be included in Petro's estate is an issue separable from and collateral to the main cause of action here, the administration of the assets inventoried in the estate. Further, the right involved is too important to be denied review and the question is such that the claim may be irreparably lost because of the threat that the assets will disappear before any final accounting and order of distribution is entered. This risk is heightened in this case because the Orphans' Court orders place no restrictions on the daughters' use of the funds that the administrator alleges have been improperly taken from the decedent. The assets may very well have already been spent or hidden from the administrator in such a way that they cannot be recovered. Accordingly, we find that the September 9, 1994, order, which denied the petition to turn over assets, is a collateral order. *Cf. In re Estate of Georgiana*, 312 Pa.Super. 339, 458 A.2d 989 (1983) (holding that an order denying a petition for the removal of an executor is appealable under *Cohen, supra*.).

■ This collateral matter has been the subject of several other orders that are secondary to the administration of this estate. The order of July 10, 1995, denying the administrator's exceptions, and the order of July 17, 1995, which stayed the entry of final judgment, involve the same collateral matter. Likewise, the order of March 11, 1996, that denied the motion for a new trial nunc pro tunc, relates solely to this collateral matter. We must therefore determine the proper procedure for filing an appeal when there are multiple orders concerning a matter collateral to the main cause of action.

As a collateral order, the July 10, 1995, order could have been appealed to this Court within 30 days of the entrance of that order. Pa.R.A.P. 313, 903. Rather than appeal to this Court at that time, the administrator elected to file a Motion for a New Trial Nunc

Pro Tunc based upon after-discovered evidence. Such was his right. We can find no rule of law, either statutory or common law, which states that a collateral order *must* be appealed within 30 days of its entrance or an appeal based upon the substance of the collateral order is forever precluded. *See* Pa. R.A.P. 313(a) ("An appeal *may* be taken as of right from a collateral order of an administrative agency or lower court.")(emphasis added); *compare Commonwealth v. Brady,* 510 Pa. 336, 508 A.2d 286 (1986) (allowing an immediate appeal from the denial of a motion to dismiss based upon a double jeopardy claim under collateral order doctrine) *with Commonwealth v. Yerby,* 544 Pa. 578, 679 A.2d 217 (1996) (ruling on appeal from the denial of a motion to dismiss based upon an alleged violation of double jeopardy principles after a jury trial and the imposition of a judgment of sentence and therefore well beyond 30 days after the denial of the collateral order).

Although Rules 902 and 903 of the Pennsylvania Rules of Appellate Procedure state that an appeal permitted as of right from a lower court order shall be taken within 30 days after the entrance of the order in question, these rules do not preclude our review of the merits of the administrator's appeal. In the context of collateral orders, Rules 902 and 903 merely govern when the appeal must be taken if an appellant decides to exercise his right to file an immediate appeal. These rules do not mandate that such an appeal must be taken at that time or the appellant's claims be forever lost. The administrator did not immediately appeal the July 10, 1995, order, even though it was permissible for him to do so under Rule 313. Thus, although this appeal was taken more than 30 days after July 10, 1995, that fact is not dispositive in this matter.

We are also guided by Rule of Appellate Procedure 311, which relates to interlocutory appeals as of right. Section (a)(8) of that rule states that an appeal may be taken as of right from any order that is made appealable by statute or general rule. Thus, this section encompasses those orders that are made appealable under the collateral order rule. Rule 311 then discusses when the failure to immediately appeal an order precludes further review. Rule 311 states, in pertinent part:

**(g) Waiver of Objections.**

(1) Where an interlocutory order is immediately appealable under this rule, failure to appeal:

(i) Under Subdivision[ ] (a) [orders made appealable by general rule] ... *shall not* constitute a waiver of the objection to the order and the objection may be raised on any subsequent appeal in the matter from a determination on the merits.

Pa.R.A.P. 311(g)(emphasis added). Appeal rights under Rule 311 and other procedural rules relating to appellate rights are *cumulative* and no inference may be drawn from the fact that two or more rules may be applicable to an appeal from a given order. *See* Pa. R.A.P. 311, note. Accordingly, the appeal of this issue is not limited to being taken within 30 days of July 10, 1995; rather, an appeal of this issue was properly taken when the collateral matter (the inclusion of assets in Petro's estate) was finally determined.

We should therefore look to the date that the collateral matter was finally concluded to determine whether the appeal was taken in a timely fashion in this case. On July 17, 1995, the trial court entered an order that stayed entry of final judgment for purposes of an appeal. Although only an order that expressly grants reconsideration will stay the running of the appeal period for a *final order,* Pa.R.A.P. 1701(b)(3), we are not dealing in this case with a final order. Instead, we are dealing with a collateral order, which is not a final order in the classical or technical sense. There is a difference between an order that is *considered* final for purposes of permitting an appeal under Rule 313 and a final order under Rule of Appellate Procedure 341 that disposes of all claims or of all parties to an action. The trial court has the authority to stay judgment of a matter by an order expressly stating the same. *See* 42 Pa.C.S. § 912 **(Powers of courts of common pleas);** *see also U.S. v. Breyer,* 41 F.3d 884, 893 (3d Cir.1994)(the power to stay is incidental to those powers inherent in every court to dispose of cases so as to promote

their fair and efficient adjudication). Thus, the Orphans' Court was within its authority in this case to stay the final adjudication of the collateral matter until its decision on the motion for a new trial nunc pro tunc.

The court denied the motion for a new trial on March 11, 1996. Once this happened, all issues related to the collateral matter regarding the inclusion of these assets in the estate were finally concluded. Judgment was entered on March 29, 1996, upon the joint praecipe of counsel for all parties included in the collateral matter. The instant appeal was filed on April 4, 1996. As the appeal was taken within 30 days from the conclusion of this collateral matter, the appeal is timely filed. This Court may now review all facets of the issues relating to this collateral matter and is not limited to the issue of whether the denial of the motion for a new trial nunc pro tunc was appropriate. Accordingly, we address the merits of the administrator's appeal.

The administrator, in essence, presents three issues for our review: (1) whether the trial court erred in permitting Christine Cuniak to testify in violation of the dead man's act; (2) whether the daughters failed to establish, by clear and convincing evidence, the existence of valid inter vivos gifts from the decedent; and (3) whether the daughters exceeded the terms of their father's power of attorney through the transfer of his CDs, stock, and savings account assets to themselves. Because the issues are interrelated, we address them together.

■ Our standard of review in addressing an appeal regarding a decree in equity is well-established. We are bound by the chancellor's findings of fact, including findings regarding the credibility of witnesses, because the chancellor has the opportunity to hear the witnesses and observe their demeanor on the stand. *Hera v. McCormick,* 425 Pa.Super. 432, 625 A.2d 682 (1993). Our review is therefore "limited to a determination of whether there was an error of law and whether the chancellor's factual findings are supported by sufficient evidence." *Id.* at 439, 625 A.2d at 685.

■ The main controversy in this case is whether John Petro made valid inter vivos gifts of his assets to the daughters. The elements required to establish a valid inter vivos gift are donative intent and delivery. *Id.* Initially, the burden is on the alleged donees (the daughters) to prove an inter vivos gift by clear, precise, and convincing evidence. *Id.*

■ The administrator asserts that the court erred in permitting the daughters to testify regarding John Petro's intent to give them gifts that represent the bulk of his estate. The administrator maintains that the dead man's act prevents the daughters from testifying about these alleged gifts. This act provides, in pertinent part, as follows:

[I]n any civil action or proceeding, where any party to a thing or contract in action is dead ... and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased ... party shall be a competent witness to any matter occurring before the death of said party....

42 Pa.C.S. § 5930. " 'The purpose of the dead man's act is to prevent the injustice that would result from permitting a surviving party to a transaction to testify favorably to himself and adversely to the interest of the decedent when the representative of the decedent would be hampered in attempting to refute the testimony by reason of the death of the decedent.' " *In re Estate of Cecchine,* 336 Pa.Super. 111, 117, 485 A.2d 454, 458 (1984), quoting *Visscher v. O'Brien,* 274 Pa.Super. 375, 382, 418 A.2d 454, 458 (1980). In other words, "surviving parties who have an interest which is adverse to [the] decedent's estate are disqualified from testifying as to any transaction or event which occurred before [the] decedent's death." *Hera v. McCormick, supra,* at 444, 625 A.2d at 688. Thus, in the instant case, the court could not admit the daughters' testimony regarding John Petro's statements about inter vivos gifts without independent testimony estab-

lishing prima facie evidence of donative intent and delivery.

After a review of the record, we conclude that the daughters have not established through clear and convincing evidence that their father intended to give them inter vivos gifts of his money to the exclusion of his other heirs. Daniel Goodyear, Esquire, the attorney who created the power of attorney for John Petro at the request of his daughter, Irene Bucci, testified that John Petro did not discuss giving his assets to his daughters. N.T., October 12, 1993, at 17, 21. Nor did the daughters discuss their father's intention to give them his estate with attorney Goodyear. *Id.* at 26–27, 59. In fact, attorney Goodyear was unaware of the size of John Petro's estate; even after preliminarily discussing the estate with Irene Bucci, he was under the impression that the estate was worth approximately $30,000. *Id.* at 48–50, 60–71.

Mr. James D. Darby, Jr., from the investment firm of Kidder, Peabody & Company, testified that the daughters' opened accounts on behalf of John Petro in August of 1990. The daughters brought in several shares of stock, valued at approximately $115,000, for deposit into a brokerage account in John Petro's name. *Id.* at 107–12. Mr. Darby never dealt with John Petro personally; he only interacted with the daughters. *Id.* at 113. Mr. Darby received a copy of the executed power of attorney, and relied upon its provision giving the daughters the authority to sell, exchange, pledge, assign, transfer, and deliver John Petro's assets; Mr. Darby did not undertake action on the brokerage account in reliance upon the provision that granted the attorney-in-fact the authority to make gifts on behalf of John Petro. *Id.* at 125–26. Mr. Darby also testified that his understanding was that the daughters wanted ed to provide safe and tax-free investments for their father. *Id.* at 155–56. The daughters never mentioned to Mr. Darby that their father had made any gifts to them. *Id.* at 170–71.

Mrs. Margaret Armbruster, a bank employee who worked on John Petro's accounts at Great American Federal Savings and Loan, testified about the daughters' inquiries into their father's accounts shortly after their mother's death. Mrs. Armbruster told the daughters that she could not release this information without either their father being present or the daughters having a power of attorney over his affairs. *Id.* at 203. The daughters returned after a short period and presented the power of attorney. *Id.* at 204. The daughters did not indicate that their father intended to give them his money. *Id.* at 207. The daughters instead told Mrs. Armbruster that their father wished to ensure that his money was protected by FDIC insurance; they therefore directed Mrs. Armbruster to retitle his CDs and other accounts in amounts under $100,000. *Id.* at 208. Mrs. Armbruster also spoke with John Petro himself to determine if he wished his accounts to be retitled and wanted the daughters' names to be added to the accounts. *Id.* at 212. John Petro personally came into the bank and told Mrs. Armbruster that she was to do what the daughters wished with his accounts because he trusted the daughters; he did not, however, indicate that he was giving his money away. *Id.* at 213–14, 232. Mrs. Armbruster still believed that all the money belonged to John Petro; the interest earned from the CDs and the other accounts passed into his savings account. *Id.* at 219. Mr. Petro also never stated that the money belonged to anyone else. *Id.* John Petro also sent a letter to the bank that authorized the daughters to sign his name on his behalf "*on any account in which my name appears as a joint owner.*" *Id.* at 223 (emphasis added).

This was the only evidence presented before Christine Cuniak testified that her father intended to give her and Irene Bucci his money and stocks. *Id.* at 281. The daughters, however, needed to establish through independent evidence prior to this testimony that their father intended to create inter vivos gifts. *Hera v. McCormick, supra.* We conclude that they have failed to meet this burden. Both attorney Goodyear and Mrs. Armbruster testified that they spoke with John Petro personally and yet he gave no indication that he intended to give the bulk of his estate away to the daughters. Mr. Darby never spoke with John Petro; he could therefore not testify to Petro's intent to give his

estate to the daughters. Attorney Goodyear indicated that Petro wanted two of his children to receive nothing from his estate, and indicated that he did not know how to deal with grandchildren from his deceased children, but he did not mention the remaining four live children. Mrs. Armbruster spoke with John Petro while he was sitting with the daughters in the bank; Petro said that he wanted the bank to follow his daughters' directions concerning his money but he did not indicate that it was no longer his money or that his daughters were now the owners. In fact, the accounts for the most part retained his name as a joint owner on them.

In conclusion, the daughters have not established by clear, convincing, and independent evidence that John Petro intended to give his estate to them. Because they have not met this burden, the dead man's act precludes them from testifying about their father's intent regarding these assets. *Hera v. McCormick, supra; see also Friedeman v. Kinnen*, 452 Pa. 365, 369, 305 A.2d 3, 4 (1973) ("[I]f the alleged donee fails to establish a prima facie gift by independent testimony before he takes the stand, he will not be competent to testify.").

◼ Christine's testimony also does not fall within any of the recognized exceptions to the dead man's act, and it was incumbent upon her to bring herself clearly within the statutory provisions. *In re Estate of Dembiec*, 321 Pa.Super. 515, 528, 468 A.2d 1107, 1114 (1983). The Orphans' Court relied upon the exception that states that a surviving party may be competent to testify to relevant matters occurring before the death of another if, but only if, the subject matter of the proposed evidence is something that occurred between the surviving party and another living and competent witness who has testified against the surviving party at trial. 42 Pa.C.S. § 5933(a). The court stated that all the things that Christine Cuniak testified to occurred within the presence of attorney Goodyear, Mrs. Armbruster, or Mr. Darby. However, this exception cannot apply because, as stated above, none of these independent witnesses testified that John Petro indicated that he either was or was not giving the daughters his money. There simply

was no conversation between Ms. Cuniak, Petro, and the other witnesses regarding any gifts. Reliance upon this exception to the dead man's act was therefore erroneous. *Dembiec, supra* (finding that, when there was no evidence of a conversation occurring between the surviving party and the competent witness to the relevant matter, the court could not rely upon this exception to the dead man's act to permit the surviving witness to testify).

◼ Moreover, as the administrator has indicated in his Brief to this Court, a presumptively valid gift may be rebutted by establishing that Petro and his daughters had a confidential relationship at the time the alleged gift was made. Brief for Appellant at 19. Proof of a confidential relationship shifts the burden to the alleged donees (here, the daughters) to prove that the gifts were fair and free from suspicion. *Hera v. McCormick, supra.* "[A] confidential relationship may be established by proof that the alleged donee possesses a power of attorney over a decedent's assets." *Id.* at 448, 625 A.2d at 691; *see also In re Estate of Keiper*, 308 Pa.Super. 82, 454 A.2d 31 (1982).

Based upon the foregoing, we find that the Orphans' Court erred in admitting the testimony of Christine Cuniak regarding her father's intention to give her and her sister Irene the bulk of his estate. We therefore reverse the orders entered in this collateral matter and remand the case for a new hearing on the merits at which the daughters' testimony would be excluded.

Orders **REVERSED.** Case **REMANDED.** Jurisdiction **RELINQUISHED.**

FORD ELLIOTT, J., files a dissenting opinion.

### DISSENTING OPINION

FORD ELLIOTT, J.:

I respectfully dissent because I do not believe the merits of the trial court's July 10, 1995 order, which denied the administrator's exceptions to the denial of his petitions to turn over assets, are properly before this court. I cannot agree with the majority that the administrator could choose whether or

not to appeal from this collateral order. As a result, I would find that the administrator's right to appeal from the July 10th order was out of time when he failed to file an appeal within 30 days of entry of the order, and that, consequently, we lack jurisdiction to address any of the issues decided by that order. I would therefore find that the issue raised in the administrator's motion for a new trial *nunc pro tunc* based on after-discovered evidence is the only issue properly before this court. My reasons follow.

"As an appellate court, we may, *sua sponte,* determine whether an appeal is properly before this court." *Continental Bank v. Andrew Building Co.,* 436 Pa.Super. 559, 564, 648 A.2d 551, 553 (1994), *citing Edmonds by James v. Western Pa. Hosp. Radiology Assoc.,* 414 Pa.Super. 567, 571, 607 A.2d 1083, 1085 (1992) (other citations omitted). Establishment of appellate jurisdiction is of equal importance with the establishment of a meritorious claim for relief; jurisdiction is a predicate upon which consideration of the merits must rest. "Where the jurisdiction of the court has been lost because of the staleness of the complaint, the attractiveness of an argument on the merits is of no moment because the tribunal is without the power to grant the requested relief." *Robinson v. Commonwealth of Pennsylvania, Board of Probation and Parole,* 525 Pa. 505, 510, 582 A.2d 857, 860 (1990).

I agree with the majority that the instant appeal, insofar as it relates to the merits of the July 10, 1995 order, may properly be considered an appeal from a collateral order, pursuant to Pa. R.A.P. 313. In *Pugar v. Greco,* 483 Pa. 68, 394 A.2d 542 (1978), our supreme court noted:

Under *Cohen* [*v. Beneficial Industrial Loan Corporation,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528[ ] (1949) ],[1] an order is considered final and appealable if (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in

the case, the claimed right will be irreparably lost.

*Pugar, supra* at 73, 394 A.2d at 545, *citing Cohen, supra* at 546, 69 S.Ct. at 1226. "However, to qualify under the *Cohen* exception all three factors must be met." *Fried v. Fried,* 509 Pa. 89, 95, 501 A.2d 211, 214 (1985). As the *Hanson* court observed:

Whether an order is final and appealable cannot necessarily be ascertained from the face of a decree alone, nor simply from the technical effect of the adjudication. The finality of an order is a judicial conclusion which can be reached only after an examination of its ramifications.

*Hanson, supra* at 265, 679 A.2d at 787–88, *quoting Pugar, supra* at 73, 394 A.2d at 545, *quoting Bell, supra.*

Thus, if we are to find that the order dismissing appellant's exceptions is collateral to the ultimate settlement of Decedent's estate, I believe we must, under the definition of a collateral order, find that unless appellant immediately appealed from the order, a right too important to be denied review would have been irreparably lost. *See Pugar, supra. See also In re Estate of Georgiana,* 312 Pa.Super. 339, 342, 458 A.2d 989, 990–91 (1983) (finding that an order dismissing exceptions to a previous order denying a petition for removal of an executor and appointment of a successor was a final, appealable order pursuant to the analysis promulgated by the Supreme Court in *Cohen, supra,* and *Pugar, supra,* even though the order of the court below did not end the litigation or dispose of the entire case, and there had been no final account of distribution of the estate), *affirmed,* 504 Pa. 510, 475 A.2d 744 (1984). As noted *supra,* however, the record indicates no notice of appeal was filed within 30 days of the July 10, 1995 order.

As our Rules of Appellate Procedure provide:

An appeal permitted by law *as of right* from a lower court to an appellate court *shall* be taken by filing a notice of appeal

---

1. *Cohen* was adopted by the Pennsylvania Supreme Court in *Bell v. Beneficial Consumer Dis-*

*count Co.,* 465 Pa. 225, 348 A.2d 734 (1975).

with the clerk of the lower court within the time allowed by Rule 903 (time for appeal). Pa. R.A.P. 902, 42 Pa.C.S.A (emphasis added). Rule 903 provides in pertinent part that the notice of appeal required by Rule 902 "shall be filed within 30 days after the entry of the order from which the appeal is taken." Pa. R.A.P. 903, 42 Pa.C.S.A. Furthermore, a collateral order is an order from which an appeal may be taken as of right. Pa. R.A.P. 313(a), 42 Pa.C.S.A.

I recognize that a collateral order is not a final order in the classical or technical sense. *See* Zigmont Pines, *Pennsylvania Appellate Practice: Procedural Requirements and the Vagaries of Jurisdiction (Part 1)*, 91 Dick. L.Rev. 55, 80 (1986) (noting that finality in the classical or technical sense means that the litigant is actually and completely out of court and that litigation in the lower court is completed). Nevertheless, as our cases interpreting the collateral order doctrine indicate, a collateral order is *considered* final for purposes of appeal. *See Pugar, supra* at 73, 394 A.2d at 545 (defining a collateral order as one that is considered final and appealable); *Hanson, supra* at 758, 679 A.2d at 788 (noting that collateral orders are recognized as final even if they do not dispose of all parties or claims). *See also* Pines, *supra* at 109–110 (noting two necessary corollaries to the collateral order doctrine: "(1) the lower court's determination on the collateral matter must be final and (2) deferred appellate review of the lower court's determination would be either ineffective or impossible."). As a result, the same rules that apply to final orders must be applied to collateral orders. To allow a party to appeal from a collateral order as of right without imposing upon that party the same procedural requirements we impose upon a party appealing from a "classical" final order or judgment is to allow that party to benefit from the doctrine of finality without incurring its obligations. *See Thermo–Guard, Inc. v. Cochran*, 408 Pa.Super. 54, 61, 596 A.2d 188, 192 (1991) (holding that the proper procedure for appealing from a final decree in equity, from which an appeal may be taken as of right, is to file a notice of appeal pursuant to Chapter 9 of the Rules of Appellate Procedure, not to file a petition for permission to appeal); *Mash v. Old Home Manor, Inc.*, 298 Pa.Super. 7, 10, 444 A.2d 147, 149 (1982) (noting that Chapter 9 of the Rules, by its terms, applies to all appeals except those specifically excluded by Rule 901, and holding that the Chapter therefore applies to appeals pursuant to Rule 311, interlocutory appeals as of right). *See also* G. Ronald Darlington et al., *Pennsylvania Appellate Practice* § 902.1, at 9–7 (2d ed. 1996) (stating that "[t]he notice of appeal requirements of Chapter 9 apply only to those cases in which an appeal is permitted by law as of right.").

While the majority acknowledges that the July 10, 1995 order is a collateral order, (majority opinion at 5), the majority nevertheless states it can find no rule of law which *requires* that a collateral order be appealed within 30 days. The majority then attempts to compare an appeal from a collateral order under Pa. R.A.P. 313 with an appeal from an interlocutory order as of right under Rule 311. In so doing, the majority refers to Subdivision (g), Waiver of Objections, under Rule 311, which provides that failure to appeal an order under subdivision (a), including paragraph (a)(7),[2] "An order which is made appealable by statute or general rule," shall not constitute waiver of the objection, and the objection may be raised on any subsequent appeal. Pa. R.A.P. 311(g)(1)(i). The majority then concludes that subparagraph (g)(1)(i) applies to collateral orders because collateral orders are "general rules" for purposes of subdivision (a)(7). I disagree with this analysis for three reasons.

First, if, as the majority reasons, paragraph (a)(7) encompasses the general rule under Rule 313(a) pertaining to collateral orders because it is an order that is made appealable by statute or general rule, then one could also argue that paragraph (a)(7) encompasses the general rule under Rule 341(a), by which final orders from an administrative agency or lower court are made appealable. If paragraph (a)(7) applies to Rule 341, then, under the majority's analysis,

2. The majority cites to paragraph (a)(8); however, in 1995 when the order at issue was entered, the paragraph to which the majority refers was (a)(7).

subparagraph (g)(1)(i) also applies to Rule 341. As a result, failure to appeal from a final order under Rule 341 does not constitute waiver. I do not believe this is the law of Pennsylvania.

The majority also overlooks the Note to the revised 1995 edition of the Rules which states:

> The reference in Subdivision (g) to an 'interlocutory' order is intended to make clear that *where an order has a 'final aspect'* the principle stated in paragraph (d)(1)[ [3] ] may be inapplicable, and *failure to appeal the original order may operate as a waiver of all objections to the order.* In this respect the rule is intended to continue the prior practice.

Pa. R.A.P. 311, Note, amended May 6, 1992, applicable to all orders entered on or after March 1, 1994 (emphasis added).[4] Certainly, a collateral order has a "final aspect."

Additionally, while the majority cites to a section of the Note to Rule 311 which states that appeal rights under Rules 311, 312, 313, 341, 342, and 343 are cumulative, the fact that appeal rights are cumulative does not mean that parties are free to choose whether or when to appeal from final orders.

Finally, I again refer to the three prongs of the collateral order test, the last of which requires that, in order to be considered a collateral order, a right must be irreparably lost if an appeal is not immediately taken. *See Fox v. Gabler*, 377 Pa.Super. 341, 349, 547 A.2d 399, 403 (1988) (finding that an order requiring Gabler to post $10,000 or face imprisonment following his citation for civil contempt in the underlying equity ac-

tion, while collateral to the main action, was not an appealable collateral order because no right would be irreparably lost if review of the order awaited final judgment in the main action). I would suggest that appellant cannot have it both ways.

The majority attempts to overcome this obstacle by characterizing the July 10, 1995 order as part of a broader collateral matter, encompassing all of the orders entered between September 9, 1994[5] and March 29, 1996, and from which an appeal was therefore timely taken on April 4, 1996. (Majority opinion at 630–32.) While I agree with the majority that one must usually await the final resolution of any matter, collateral or not, before perfecting an appeal to this court, I disagree with the majority's characterization of the point of finality in the case before us. In any case, whether we characterize the July 10, 1995 order as a final, collateral order or as a final judgment entered in a collateral matter, the same result obtains; an appeal should have been taken within 30 days.

The majority, however, attempts to characterize the point of finality in the collateral matter as March 11, 1996, when the trial court denied the administrator's motion for a new trial. (Majority opinion at 631.) I cannot agree: the same rules that apply to an appeal from any other final order apply to an appeal from an order in a collateral matter. The July 10, 1995 order was entered as a final decree on the matter of the return of assets to the estate. If a similar final decree had been entered under Rule 341 instead of Rule 313, we would not hesitate to quash the appeal as untimely where no appeal was perfected within 30 days, but where, as here,

---

**3.** There is no paragraph (d)(1). I must therefore assume that the authors of the Note were referring to paragraph (g)(1) since this Note addresses subdivision (g). Even if it does not, however, the meaning of the note is clear.

**4.** This note was subsequently amended April 10, 1996, effective April 27, 1996.

**5.** The record indicates that the order denying the administrator's petitions to return assets was entered September 9, 1994, and that the administrator filed exceptions to this order on September 19, 1994. These exceptions were denied by order dated July 10, 1995. The administrator then filed a motion for a new trial *nunc pro tunc* on

July 17, 1995, to which the court responded by entering an order that same date in which it "stayed" entry of judgment pending disposition of the new trial motion. The motion for a new trial *nunc pro tunc* was denied by order entered March 11, 1996, and judgment was then entered on March 29, 1996. Because judgment had been entered as part of the July 10, 1995 order, which "ordered, adjudged and decreed" that exceptions to the September 9, 1994 order were dismissed, the July 17, 1995 order did not operate to "stay" entry of an already-entered judgment. Likewise, the entry of judgment on March 29 was a nullity except insofar as it related to disposition of the motion for a new trial *nunc pro tunc*.

appellant chose instead to file a motion for a new trial *nunc pro tunc* based on after-discovered evidence, and the trial court merely entered an order purportedly staying entry of judgment pending disposition of that motion.

Our case law interpreting the Rules of Appellate Procedure makes it clear that only an order *expressly granting reconsideration* stays the running of the appeal period from the entry of a final order, be it a collateral order or a final judgment. *See In re Greist,* 431 Pa.Super. 188, 636 A.2d 193 (1994) (notice of appeal from an involuntary commitment order was untimely made more than 30 days after the commitment order was entered, even though the trial court scheduled a hearing for the motion to reconsider; trial court's failure expressly to grant reconsideration within 30 days rendered the commitment order final, *citing* Pa. R.A.P. 903(a), 1701(b)(3), 1701 comment, 42 Pa.C.S.A.); *Shapiro v. Center Township,* 159 Pa.Cmwlth. 82, 632 A.2d 994 (1993) (an order staying all proceedings or merely setting a date for argument on a petition is not sufficient to toll the running of the appeal period, *citing* Pa. R.A.P. 1701(b)(3)(ii) and *Schoff v. Richter,* 386 Pa.Super. 289, 562 A.2d 912 (1989)), *allocatur denied sub nom. Valentine v. Wroten,* 397 Pa.Super. 526, 580 A.2d 757 (1990) (trial court's issuance of a rule to show cause why reconsideration should not be granted was insufficient to invoke Pa. R.A.P. 1701; such a rule is not a grant of reconsideration, and therefore, did not operate to prevent the thirty-day appeal period from expiring), *allocatur denied,* 527 Pa. 650, 593 A.2d 422 (1991).

As a result, while the trial court retained jurisdiction to address the motion for a new trial *nunc pro tunc* based on after-discovered evidence, it lacked jurisdiction to re-visit its July 10, 1995 order after the 30–day appeal period had run, on August 9, 1995. 42 Pa. C.S.A. § 5505. The only issues properly raised on appeal, therefore, were those raised in the motion, filed on July 17, 1995, and denied on March 11, 1996. A review of the motion, and of Judge Schwartz's opinion in response thereto, indicates that the sole issue before the court was whether a new

trial should be granted "based upon the affidavit and testimony of Bernard Petro recanting his previous testimony at trial, together with the affidavit and testimony of Catherine Cornetta in support of the evidence provided by Bernard Petro Affidavit, which reveal a potential fraud on this Court surrounding the existence of the *inter vivos* gift to respondents, which this Court previously found to exist." (Trial court opinion, 3/11/96 at 1–2.)

It is well settled in Pennsylvania that "the granting or refusal of a new trial based on after-discovered evidence is an area addressed to the sound discretion of the court and the exercise of this discretion by the court will be reversed only where it has been clearly abused." *Mar Ray, Inc. v. Starr,* 306 Pa.Super. 307, 315, 452 A.2d 739, 743 (1982), *citing Helmig v. Rockwell Manufacturing Co.,* 389 Pa. 21, 131 A.2d 622 (1957), *cert. denied,* 355 U.S. 832, 78 S.Ct. 46, 2 L.Ed.2d 44 (1957), *reh. denied,* 355 U.S. 885, 78 S.Ct. 146, 2 L.Ed.2d 115 (1957) (other citations omitted). Additionally, where, as here, the decision to grant or deny a new trial is based on a credibility determination, we review the trial court's decision with great deference, as such a decision goes to the weight of the evidence.

The weight of the evidence is an issue for the trier of fact, whose verdict will not be disturbed unless it is so contrary to the evidence as to "shock one's sense of justice." *Kiser v. Schulte,* 538 Pa. 219, 225, 648 A.2d 1, 4 (1994). Only where the injustice of the verdict " 'stand[s] forth like a beacon,' " should it be disturbed. *Id., quoting Elza v. Chovan,* 396 Pa. 112, 118, 152 A.2d 238, 241 (1959). A trier of fact is free to believe all, part, or none of the evidence presented. Finally, a reviewing court may not substitute its judgment for that of the fact-finder on issues of fact. *See Seewagen v. Vanderkluet,* 338 Pa.Super. 534, 541, 488 A.2d 21, 24 (1985).

Because only an issue of fact which hinges on the credibility of one of the witnesses is properly before us, and because I can find nothing in Judge Schwartz's opinion on the after-discovered evidence issue that shocks my sense of justice, I would be constrained

to affirm the trial court as to this last, appealable issue.

For all of the foregoing reasons, I respectfully dissent.