J-S26014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: M.D.E.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.J.S., MOTHER | No. 2250 EDA 2015 |

Appeal from the Decree and Order entered June 11, 2015,
in the Court of Common Pleas of Philadelphia County, Family Court
Division, at No(s): CP-51-AP-0000301-2015; CP-51-DP-0001711-2014

BEFORE:  OLSON, STABILE, and STRASSBURGER*, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED MAY 09, 2016**

M.J.S. ("Mother") appeals from the decree and order, dated and entered on June 11, 2015, that granted the petitions filed by the Philadelphia County Department of Human Services ("DHS" or the "Agency") seeking to terminate her parental rights to her male child, M.S. ("Child"), born in January of 2014, pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), and (b), and to change the permanency goal for Child from reunification to adoption, pursuant to the Juvenile Act, 42 Pa.C.S. § 6351.  We affirm.[1, 2]

---

* Retired Senior Judge assigned to Superior Court.

[1] On August 10, 2015, DHS filed an application to quash Mother's appeal.  In its application, DHS argued that Mother's July 9, 2015 notice of appeal constituted an untimely challenge to orders entered by the trial court on February 9, 2015 and May 28, 2015.  Specifically, DHS alleged that the February 9 order, which included a finding of aggravated circumstances as to Child, was a collateral order that Mother needed to appeal within 30 days of entry.  In addition, DHS alleged that the May 28 order was a final order

changing Child's permanency goal from reunification to adoption that Mother also needed to appeal within 30 days. On September 9, 2015, this Court denied DHS' application without prejudice and referred the request for panel consideration.

After careful review of DHS' application, the submissions of the parties, the certified record, and relevant legal authorities, we deny the application with prejudice. DHS is correct that we have previously declared that a finding of aggravated circumstances is a collateral order. *See In re: R.C.*, 945 A.2d 182, 184 (Pa. Super. 2008). Nevertheless, while a collateral order may be appealed as of right, a litigant need not do so. In *In re: Estate of Petro*, 694 A.2d 627 (Pa. Super. 1997), *appeal denied*, 706 A.2d 1213 (Pa. 1997), we said: "We can find no rule of law, either statutory or common law, which states that a collateral order *must* be appealed within 30 days of its entrance or an appeal based upon the substance of the collateral order is forever precluded." *In re: Estate of Petro*, 694 A.2d at 631, *citing See* Pa.R.A.P. 313(a) ("An appeal *may* be taken as of right from a collateral order of an administrative agency or lower court."). For this reason, we decline DHS' invitation to declare that Mother lodged an untimely appeal from the February 9 order.

We also refrain from quashing Mother's appeal from the order changing Child's permanency goal from reunification to adoption. Following proceedings before the trial court on May 28, 2015, the court held in abeyance until June 11, 2015 its decisions with respect to Child's permanency goal and termination of Mother's parental rights. Thus, the court did not enter a final order until June 11. *See* Trial Court Opinion, 11/2/15, at 3. In addition, Mother, in her brief, waived argument on the permanency goal issue in the event this Court determined that DHS proved its termination case by clear and convincing evidence. *See* Mother's Brief at 18. Since the trial court entered its final order on June 11, 2015 and since we conclude that DHS met its burden of proof before the trial court, we deem the issues surrounding Child's permanency goal change to be moot.

[2] We acknowledge that there has been a delay in the disposition of this children's fast track matter. We are also aware of our Supreme Court's admonishment that children's fast track cases should be resolved promptly. *In re: T.S.M.*, 71 A.3d 251, 261 n.21 (Pa. 2013). By way of explanation, the panel notes that the original certified record was due in this Court by August 10, 2015. Owing, in part, to the Family Court Division's relocation to the Family Court Building in Philadelphia, however, this Court did not receive the certified record until November 4, 2015. As a result, the briefing schedule in this case was delayed by nearly three months. Thereafter,

On May 1, 2015, DHS filed petitions for involuntary termination of the parental rights of Mother and Child's putative father, M.D.J., a/k/a, M.J., ("Father"), and a petition for a change in Child's permanency goal to adoption. On May 28, 2015, DHS filed an amended petition to terminate the parental rights of Mother and Father. At the time of the hearing on the petitions on May 28, 2015, Father was unavailable, as he was incarcerated at the State Correctional Institution ("SCI") at Graterford. N.T., 5/28/15, at 7. Father's counsel requested, and the trial court granted, a separate telephonic hearing, with Father in prison, to occur on June 11, 2015. *Id.* at 7-10.

At the hearing on May 28, 2015, DHS presented the testimony of Ana Arguedas, the DHS case manager who works with the family for reunification. *Id.* at 14. DHS then presented the testimony of Eva Bonilla, the DHS well-being specialist for Child's medical needs who also supervises the visits between Child and his family. *Id.* at 36-37. Mother, represented by Attorney Chris DiMuzio, testified on her own behalf. *Id.* at 45. At the conclusion of the hearing, the trial court stated that it would defer its decision on the termination of Mother's parental rights until it heard the evidence regarding the termination of Father's parental rights on June 11,

Mother requested and received a one-month extension in which to file her brief. In addition, DHS received a short extension. The panel concludes that while certain external factors have delayed the disposition in this appeal, the Superior Court has worked diligently toward prompt resolution of this dispute.

2015. N.T., 5/28/15, at 70. The trial court explained that it was affording Mother an opportunity to sign a voluntary relinquishment of her parental rights. *Id.* at 69-70. Mother did not voluntarily relinquish her parental rights.

On June 11, 2015, Father was not available telephonically, as he had been transferred to SCI at Camp Hill, and no arrangements had been made for him to be on the telephone at the commencement of the hearing. *Id.* at 5-11. The trial court found that DHS made reasonable efforts to serve Father with notice of the hearing, and proceeded with the hearing. *Id.* at 15. DHS presented the testimony of Ms. Arguedas as to Father. *Id.* at 11-15.

In its opinion entered on November 2, 2015, the trial court made the following factual findings based on the testimony and documentary evidence admitted at the hearings.

> This family became involved with the [D]epartment of Human Services on July 14, 2014, when DHS received a Child Protected [sic] Services ("CPS") report alleging that [F]ather took []Child to the hospital for a scheduled medical appointment. Child had been born prematurely at twenty-seven weeks gestation at home. Child had been previously hospitalized for two months. Between May 8, 2014 and July 7, 2014, Mother and [F]ather failed to take []Child to ten scheduled medical appointments. While at the hospital, []Child was diagnosed as suffering from a partial skull fracture and bilateral retinal hemorrhaging. The report alleged that parents were unable to explain how Child sustained the injuries and both Mother and [F]ather were the primary caregivers. It was suspected that Child's injuries were the result of non-accidental trauma resulting in child abuse. Child may be suffering from the effects of shaken baby syndrome. This report was indicated.

- 4 -

On July 15, 2014, DHS received allegations that parents were in a very violent domestic abuse relationship. DHS visited Mother's home and found it to be appropriate. Mother was unable to provide an explanation as to how Child sustained his injuries. During the visit, Mother appeared to be afraid of [F]ather. On July 16, 2014, [F]ather was arrested and charged with aggravated assault, endangering the welfare of children where a parent, guardian or other custodian commits the offense of simple assault, recklessly endangering another person, and harassment by subjecting another to physical contact. Bail was set at $750,000.00. And, a [s]tay [a]way [o]rder against [F]ather was issued. Father was incarcerated.

Child remained in the hospital for a few days. On July 18, 2014, Child was ready for discharge from the hospital. DHS obtained an Order of Protective Custody ("OPC"). On July 19, 2014, while visiting with Mother [sic], Mother attempted to provide an explanation of []Child's injuries by indicating that []Child sustained the injuries when maternal aunt's children had accidentally hit [C]hild with a toy during a visit at Mother's house on July 14, 2014. At the shelter care hearing, the trial court lifted the OPC and ordered the temporary commitment to stand. Child was in foster care. At the adjudicatory hearing on July 29, 2014, []Child was adjudicated dependent with a full commitment to DHS. The court ordered Mother for mental health services and to the Achieving Reunification Center ("ARC") for appropriate services. Child was allowed to be moved to the home of maternal aunt.

On September 5, 2014 a Simple Case Plan ("SCP") was developed for the family. Mother's objectives were: to attend a mental health evaluation; [and] to attend ARC for parenting, employment, women's empowerment, anger management, attend Child's medical appointments, and visitation. The case was being handled by a Community Umbrella Agency ("CUA"). Mother attended the SCP meeting and agreed to comply. On January 7, 2015, Mother's SCP was reviewed and remained the same as previous SCP. On February 8, 2015, CUA was informed that Mother had been inactive at ARC since September 2014, declined employment services on December 30, 2014, and was discharged on January 30, 2015, from anger management due to lack of attendance. At a permanency hearing on February 9, 2015, the trial court ordered []Child to remain as committed;

- 5 -

that Mother be referred to mental health services; that Child attends [sic] all medical appointments; and that Mother have weekly supervised visits at the [A]gency.  Mother was rated non-compliant with the permanency plan.  The trial court also found that child abuse and aggravated circumstances existed as to both Mother and [F]ather[,] and DHS did not need to make reasonable efforts to preserve and reunify the family.  On February 13, 2015, a review of Mother's SCP was held with Mother present.  Additional SCP objectives for Mother were formulated as follows: to receive a mental health evaluation with IQ testing; to follow psychiatric recommendations from her hospitalization at psychiatric hospital; apply for medical insurance; and comply with all previous SCP objectives.  On March 10, 2015, the trial court held a permanency review hearing whereby the [c]hild remained as committed and ordered the goal to be changed to adoption.

Trial Court Opinion, 11/2/15, at 1-3.

On June 11, 2015, the trial court entered separate decrees terminating the parental rights of Mother and Father to Child, and an order changing Child's permanency goal to adoption.[3]  On June 19, 2015, Mother, through Attorney David J. Averett, filed a motion for reconsideration of the June 11, 2015 termination decree.  We note that this document is in the certified record for the dependency matter, but not the record for the termination matter.  The trial court did not rule on Mother's motion for reconsideration.

On July 9, 2015, Mother, through Attorney Averett, filed a notice of appeal, along with a concise statement of errors complained of on appeal. The trial court noted that, at the time of trial, Attorney DiMuzio represented Mother; however, Attorney Averett filed Mother's appeal, without a

---

[3] Neither Father nor any other putative father has filed a separate notice of appeal, nor is any such individual a party to this appeal.

withdrawal of appearance from Mother's trial counsel or an entry of appearance from Mother's appellate counsel.[4] The trial court stated the following concerning its review of Mother's concise statement and the issues on appeal.

> On appeal, Mother's appealed [sic] attorney filed a [Concise] Statement of Errors [Complained of on Appeal] with a lot of extra verbiage in non-compliance with Pa.R.A.P. 1925(b) since it was not concise. However[,] the trial court consolidated and re-drafted for appeal purposes the issues as follows:
>
> 1. The trial court erred and abused its discretion when it found, on February 9, 2015, [a]ggravated [c]ircumstances existed as to Mother based on [C]hild being a victim of physical abuse resulting in serious bodily injury, sexual violence or aggravated neglect by the parent and no reasonable efforts are to be made to preserve and reunify Child with Mother.
>
> 2. The trial court erred and abused its discretion when it found that DHS had met its burden by clear and convincing evidence to terminate Mother's parental rights pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5).
>
> 3. The trial court erred and abused its discretion in changing the permanent placement goal from reunification to adoption.
>
> It should be noted that on the Statement of Errors filed by Mother's appeal counsel, Mother did not appeal whether the trial

---

[4] The trial court explained that, on July 15, 2015, it ordered the notes of testimony for the February 9, 2015, May 28, 2015, and June 11, 2015 hearings. On August 8, 2015, the trial court received the February 9, 2015 and June 11, 2015 notes of testimony, only. The trial court then made second and third requests for the notes of testimony on September 14, 2015 and September 22, 2015, respectively. At the end of the business day on September 22, 2015, the trial court received the notes of testimony for May 28, 2015. Trial Court Opinion, 11/2/15, at 1 n.1.

court erred and abused its discretion when it found that DHS had met its burden by clear and convincing evidence to terminate Mother's parental rights pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(b) and that involuntarily terminating [M]other's parental rights best served the emotional needs and welfare of Child; therefore, Mother has waived this issue on appeal.

Trial Court Opinion, 11/2/15, at 3-4.

In her brief on appeal, Mother raises the following issues:

Whether there was sufficient evidence to support the final orders of Judge Joseph Fernandes, dated May 28, 2015 and June 11, 2015, in Case No. CP-51-DP-0001711-2014, terminating the parental rights of MJS with respect to her child, M.D.E.S. Stated another way, whether DHS met its burden of proof of establishing by clear and convincing evidence the elements of § 2511(a)(1), (2), (5) and (b)[?]

Whether there was sufficient evidence to support the [f]inal [o]rder of Judge Joseph Fernandes, dated June 11, 2015, in Case No. CP-51-AP-0000301-2015, approving a goal change from reunification to adoption. Stated another way, whether DHS met its burden of proof of establishing by clear and convincing evidence that the goal should have been changed from reunification with Mother to adoption[?]

Mother's Brief at 6. Although Mother purports to challenge a termination decree and goal change order dated May 28, 2015, the trial court entered the final termination decree and goal change order in this matter on June 11, 2015. *See* Trial Court Opinion, 11/2/15, at 3.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if

they are supported by the record. ***In re: R.J.T.***, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id.***; ***R.I.S.***, [614 Pa. 275, 284,] 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.***; ***see also Samuel Bassett v. Kia Motors America, Inc.***, 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); ***Christianson v. Ely***, [575 Pa. 647, 654-655], 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id.***

As we discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 616 Pa. 309, 325-26, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained: "[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable

the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***Id.*** (*quoting **In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). The trial court terminated Mother's parental rights under section 2511(a)(1), (2), (5), and (b). We shall focus on subsections 2511(a)(1) and (b).

Section 2511 provides, in relevant part, as follows:

§ 2511. Grounds for involuntary termination

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

    (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions

described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

We have explained this Court's review of a challenge to the sufficiency of the evidence supporting the involuntary termination of a parent's rights pursuant to section 2511(a)(1) as follows:

> To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.
>
> * * *
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citations omitted).

> [T]o be legally significant, the [post-abandonment] contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role. The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question.

*In re Z.P.*, 994 A.2d 1108, 1119 (Pa. Super. 2010) (citation omitted); *see also In re Adoption of C.L.G.*, 956 A.2d 999, 1006 (Pa. Super 2008) (*en banc*).

Further, regarding the definition of "parental duties," this Court has stated as follows:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004).

With regard to section 2511(a)(1), the trial court stated as follows:

DHS filed its petition to terminate Mother's parental rights on May 1, 2015, with an amended petition also filed on May 28, 2015. (N.T. 5/28/15, pg. 56), (See time stamped petitions). During the last six months, immediately preceding the filing of the petition, Mother has continuously failed to perform her parental duties. Nonetheless, as required in *In re B.N.M.*, the court considers the entire case history. DHS developed Mother's goals and objectives as part of her SCP, and Mother was aware of them since she actually engaged in some of them but has not successfully completed any programs. Mother's objectives were to participate in parenting classes [and programs supporting] women's empowerment, individual counseling, anger management, job training, housing and visitation. (N.T. 05/28/15, pg. 15-16, 21). Mother's SCP objectives were developed on September 5, 2014. Mother attended the SCP meeting. (See Petition For Involuntary Termination of Parental Rights Exhibit A). CUA has been working with the family since July 18, 2014. Mother was referred for services in order to meet her SCP objectives. Even after the trial court found aggravated circumstances with no reasonable efforts to be made to reunify Child with Mother, CUA still has attempted to help Mother comply with her SCP objectives. (N.T. 05/28/15, pgs. 13-14, 20). Throughout the life of the case, Mother has failed to successfully complete her SCP objectives, except for housing. (N.T. 05/28/15, pgs. 21, 21). Mother has been referred to ARC numerous times. At the [p]ermanency hearing on February 9, 2015, the trial court found Mother non-compliant with her SCP objectives. (N.T. 05/28/15, pg. 26).

The record established Mother only attended three parenting classes and was discharged from ARC for lack of attendance. (N.T. 05/28/15, pg. 17). Enrollment in parent placement groups are [sic] not the same as enrollment in parenting classes. (N.T. 05/28/15, pgs. 32-33). Mother has never even enrolled in women's empowerment even after admitting to being in a domestic violent relationship. (N.T. 5/28/15, pgs. 16-17, 31). Mother was referred for mental health services. Mother has a history of anxiety, depression and being hospitalized. Mother attended a psychiatric evaluation that recommended individual therapy and medication, but she has not followed the recommendations or provided documentation that she is enrolled in individual therapy. (N.T. 5/28/15, pgs. 19-20, 25). Mother admitted not consistently attending her mental health therapy. (N.T. 05/28/15, pgs. 46, 48). As to anger management, Mother

- 13 -

finally started to attend, but she still has not completed the program. (N.T. 05/28/15, pg. 25). As to job training, Mother declined services. (N.T. 05/28/15, pg. 20). Although Mother claims to be looking for jobs, she has not provide [sic] any proof of her efforts to CUA. (N.T. 05/28/15, pgs. 20, 49). As [to] visits with []Child, Mother always had only supervised visits. (N.T.. 05/28/15, pg. 28-29). When Mother was hospitalized, her visits with []Child stopped. (N.T. 02/09/15, pgs. 38, 41). Mother is allowed to attend medical appointments. [N.T., 5/28/15, at 24, 39-41.] Child is a very needy infant. (N.T. 05/28/15, pgs. 28, 33, 37). Mother only recently, two months before the filing of the petitions, started to consistently attend []Child's medical appointments. (N.T. 05/28/15, pgs. 36-37).

Mother's lack of compliance has continued for at least six months prior to the filing of the termination petition. Mother has failed to achieve her SCP objectives, except for housing, during the life of the case. As a result, the trial court found that Mother evidenced a settled purpose of relinquishing her parental claim, and refused or failed to perform parental duties during the six-month period immediately preceding the filing of the petition as required by § 2511(a)(1) of the Adoption Act. DHS has met its burden or clear and convincing evidence.

Trial Court Opinion, 11/2/16, at 7-12.

After our careful review of the trial court's application of the law to the facts of this case, we find no reason to disturb the trial court's conclusions that Mother failed to perform her parental duties with regard to Child for the requisite six-month period. We also find no reason to disturb the trial court's conclusion that Mother's explanation for her conduct, *i.e.*, that she was more than minimally compliant with her SCP, and that her initial non-compliance was due to Father's physical abuse of her and the removal of her only child causing her to be severely depressed, lacked credibility. Additionally, we find no reason to disturb the trial court's determination that

Mother did not adequately explain her post-abandonment contact, as she failed to achieve her SCP objectives, except for housing, during the life of the case. Thus, the trial court's determinations regarding section 2511(a)(1) are supported by competent, clear and convincing evidence in the record. *See In re Adoption of S.P.*, 616 Pa. at 325-326, 47 A.3d at 826-827.

After we determine that the requirements of section 2511(a) are satisfied, we proceed to review whether the requirements of subsection (b) are satisfied. *See In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *Id.* at 1008.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 620 Pa. 602, 628-629, 71 A.3d 251, 267 (Pa. 2013).

The trial court found that Mother waived her challenge to section 2511(b) by failing to specifically raise this issue in her concise statement of errors complained of on appeal. *See* Trial Court Opinion, 11/2/16, at 4. We agree that this issue was not raised in Mother's concise statement, therefore, any challenge to section 2511(b) is waived. ***In the Interest of G.D.***, 61 A.3d 1031, 1036, n.3 (Pa. Super. 2013) *quoting* ***Krebs v. United Refining Co.***, 893 A.2d 776, 797 (Pa. Super. 2007) ("any issue not raised in a statement of matters complained of on appeal is deemed waived."). However, even if this issue were not waived it would be meritless. Based on the testimony of Ms. Arguedas, the trial court found that it is in Child's best interest to have a stable, nurturing, and permanent home. *Id.* at 10 (citing N.T., 5/28/15, at 21-22). Ms. Arguedas also testified that Child would not suffer any irreparable harm from the termination of Mother's parental rights. *Id.* at 21. There has not been any witnessed bond between Child and Mother. *Id.* Child has been in foster care since the case was opened in July of 2014. *Id.* Ms. Arguedas testified that, even with Mother's visitation being consistent, termination was still in Child's best interests, and that Mother has only been offered supervised visits. *Id.* at 22. Ms. Arguedas had last seen Child in his foster home on May 11, 2015, where she found that he was safe, and that his foster parents were meeting his needs. *Id.* at 23. Ms. Arguedas observed the interaction between Child and his foster parents, and found that Child developed an extremely close bond in the pre-

adoptive foster home where he had been placed in February of 2015. *Id.* Ms. Arguedas stated that Child looks to his foster mother to meet his needs and to take him to medical appointments. *Id.* at 24. Although Mother had been consistent in attending Child's medical appointments, Child looks to his foster mother, not Mother, at the medical appointments. *Id.*

There is sufficient, competent evidence in the record from which the trial court could properly conclude that Child's foster parents have provided for his developmental, physical, and emotional needs and welfare, and that Mother will not be able to provide for Child's needs. The trial court properly concluded from the evidence that Child's best interests would be served by the termination of Mother's parental rights.

Further, the trial court properly found that there is no bond between Child and Mother. We have stated that, in conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d at 1121. This Court has observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008). Mother failed to "exhibit [the] bilateral relationship which emanates from the parent['s] willingness to learn appropriate parenting . . . ." *In re K.K.R.S.*, 958 A.2d 529, 534 (Pa. Super. 2008). From the evidence, the trial court could

properly find that Mother did not put herself in a position to assume daily parenting responsibilities and develop a tangible bond with Child. **See In re J.L.C.**, 837 A.2d 1247, 1249 (Pa. Super. 2003).

While Mother may profess to love Child, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. **In re Z.P.**, 994 A.2d at 1121. We stated in **In re Z.P.**, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." **Id.** at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." **In re B., N.M.**, 856 A.2d at 856.

As there is competent evidence in the record that supports the trial court's credibility and weight assessments regarding Child's needs and welfare and the absence of any bond with Mother, we conclude that, even if this issue were not waived, the trial court did not abuse its discretion in finding that termination was proper under section 2511(b). **See In re Adoption of S.P.**, 616 Pa. at 325-26, 47 A.3d at 826-27. Accordingly, we affirm the termination decree.

Next, Mother asserts that there was insufficient evidence to support the order changing the permanency goal for Child from reunification to adoption. In her brief, Mother states that she is not submitting any

argument on this issue, and, if there is sufficient evidence to support the termination of her parental rights, she is not challenging the goal change. Mother's Brief, at 18. Pursuant to Pa.R.A.P. 2119 (a), "The argument shall be divided into as many parts as there are questions to be argued . . . followed by such discussion and citation of authorities as are deemed pertinent." In addition, Rule 2119(b) provides, "Citations of authorities must set forth the principle for which they are cited." Pa.R.a.P. 2119(b). "Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." **Lackner v. Glosser**, 892 A.2d 21, 29-30 (Pa. Super. 2006) (citations omitted). Applying these principles, and as we find that the trial court's determinations regarding section 2511(a)(1) and (b) of the Adoption Act are supported by sufficient, competent evidence in the record, we hold that Mother waived any challenge to the order changing the permanency goal for Child from reunification to adoption. For each of the foregoing reasons, we affirm the decree and order entered by the trial court.

Decree and order affirmed. Application to quash denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/9/2016